76FVWORC                              Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  WORLD TRADE CENTER

4    LOWER MANHATTAN DISASTER                    21 MC 102 (AKH)

5    SITE LITIGATION

6    ------------------------------x

                                        New York, N.Y.
7                                       June 15, 2007
                                        1:05 p.m.

8
     Before:
9
                    HON. ALVIN K. HELLERSTEIN,
10
                                        District Judge
11
                         APPEARANCES
12
     WORBY GRONER EDELMAN & NAPOLI BERN LLP
13        Attorneys for Plaintiffs
     BY:  WILLIAM H. GRONER
14        MARC J. BERN
          WILLIAM J. DUBANEVICH
15            -AND-
     GREGORY J. CANNATA & ASSOCIATES
16   BY:  GREGORY J. CANNATA
              -AND-
17   ROBERT A. GROCHOW PC
     BY:  ROBERT A. GROCHOW
18

19

20

21

22

23

24

25

76FVWORC                        Conference

1                       APPEARANCES (cont'd.)

2    PATTON BOGGS LLP
          Attorneys for Defendant City of New York
3    BY:  JAMES E. TYRRELL, JR.
          JOSEPH E. HOPKINS

4
     FLEMMING ZULACK WILLIAMSON ZAUDERER LLP
5         Attorneys for Defendant Silverstein Properties, Inc.
     BY:  THOMAS A. EGAN

6
     KIRKLAND & ELLIS LLP
7         Attorneys for Defendant Verizon New York
     BY:  LEE ANN STEVENSON

8
     STERN TANNENBAUM & BELL LLP
9         Attorneys for Defendant
          Broadway West Street Associates, Ltd.
10   BY:  FRANCINE N. NISIM

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

76FVWORC                        Conference

1          (In open court)

2          THE COURT:  These cases remind me of ski boots.  One

3     of the great pleasures of skiing is taking off your boots after

4     you ski.  So I think a great pleasure of the weekend is to

5     leave all you fellows.

6          (Laughter)

7          THE COURT:  No offense intended.  I have a long

8     agenda.  My thanks to those who sent it in.  And we'll try to

9     go down the list as it's presented.

10          So the number of check-off complaints filed.  And I'm

11     going to be told first by Gregory Cannata; then by Robert

12     Grochow; then by someone from Worby, Groner, Napoli & Bern; and

13     then others.

14          MR. CANNATA:  49 into 102, your Honor.

15          THE COURT:  49 plaintiffs.  Someone has 45.

16          MR. GROCHOW:  I apologize, your Honor.  It's 45.

17          THE COURT:  45.  Give me the division among the three

18     sets of lawyers, several sets of lawyers.

19          MR. CANNATA:  That's for Cannata and Grochow only.

20          THE COURT:  Yes.

21          MR. BERN:  For Worby, Groner, Edelman, Napoli, Bern,

22     your Honor, it's 629.

23          THE COURT:  And are there others?  No.  So together we

24     have 674 cases, probably more to come.  And what is the status?

25          MR. CANNATA:  The complaints have been filed with the

76FVWORC                         Conference

1   Court as the Court directed.  And we are preparing a CD to

2   distribute to all the defendants with all the pleadings.  So

3   every defendant will have a complete set of pleadings from our

4   side, from the 45 of our cases.

5            THE COURT:  It probably would have been better to have

6   a web page that anyone could link up to, because you're going

7   to have changes that will constantly flow.

8            MR. CANNATA:  That's something we haven't considered,

9   Judge.  But we can certainly look into that, putting it all on

10  a web site.

11           THE COURT:  So these are the master pleadings, and

12  then we have the check-off complaints, and then we get into

13  some of the controversies in the case management order with

14  regard to that.  So why don't you speak to that issue.

15  Mr. Cannata?

16           MR. CANNATA:  As to the specific case management

17  order?

18           THE COURT:  What's happening now?  Tell me where you

19  stand, how it's going, what issues do you have, and then lead

20  me into the case management order.

21           MR. CANNATA:  Well, I think the first issue that we're

22  going to have to deal with, Judge, is the question of motion

23  practice, which is on the agenda a little further down.

24           And the question is going to be whether that's going

25  to stop the litigation or whether we're going to be able to



76FVWORC                        Conference

1   proceed with discovery pending the motions.

2           THE COURT:  Anybody wants to make a motion, will make

3   a motion; anybody who wants to take discovery, will take

4   discovery.

5           MR. CANNATA:  What we would like to do is we'd like to

6   proceed with at least the discovery of insurance policies at

7   this stage.

8           THE COURT:  I don't have any reason why you shouldn't

9   pursue discovery.

10          MR. CANNATA:  The other thing, Judge, I think now that

11  all the defendants will receive the pleadings, they'll know

12  exactly who the employers are who work for each plaintiff.  And

13  we should also seek a cutoff date for impleader actions of the

14  employers and any other parties that they deem responsible.

15          The reason why I suggest that, Judge, is because once

16  we start depositions, we would like to see them done one time

17  rather than twice, not once for the defendant --

18          THE COURT:  It's probably not going to work because of

19  all of the complications in these lawsuits, some of which are

20  stayed, some of which are not stayed, overlapping issues.

21  We're to get into a definition of what is really the area of

22  the World Trade Center.  It's very hard, although we have the

23  nice distinctions of different numbers, when you test the

24  distinctions, you test the definitions, you get into a lot of

25  difficulty.

76FVWORC                          Conference

1          Let me step back.  Everybody is suing.  One of the

2    issues is how to accommodate people who now want to sue, not

3    yet sued.  They wake up, they've got a cough; they feel they

4    have a lawsuit.

5          So the first step, they have to go and get permission

6    to sue the City, if the City is involved.  In some of the cases

7    involve the City as a property owner.  If they're not suing the

8    City, they're not proposing to sue the City or the Port

9    Authority, they just need to sue.

10         And you've created a very simplified complaint to

11   accommodate those people with the promise that within a set

12   number of days afterwards they'll file a proper complaint.  Is

13   there any objection to that procedure?  It's a simple

14   procedure.

15         MR. HOPKINS:  I believe that's the procedure that's

16   envisioned in the case management order that we submitted.

17         THE COURT:  Right.

18         MR. HOPKINS:  And except for a couple of areas of

19   distinction and viewpoints there, the rest of the terms of the

20   case management order have been worked out between counsel.

21         THE COURT:  Right.  With regard to the master

22   pleadings, they have a lot of generalities, and then there's a

23   check-off complaint afterwards, and it's supposed to be

24   specific.  There are issues whether they are amendments,

25   they're not amendments, I don't know what really turns on that,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                        Conference

1    but apparently the Statute of Limitations is an issue.

2         I tell you, I don't know anything better, but I'm not

3    very happy with this general procedure for reasons I've already

4    expressed before.  But we have it, so we'll work with it.

5         Mr. Tyrrell, what is this substantive issue that

6    promises to get buried or threatens to get buried in the

7    process of master complaints and check-off complaints?

8         MR. TYRRELL:  Your Honor, there are a couple of

9    issues.  I mean most of this has been worked out, so in this

10   area --

11        THE COURT:  But you've put up a couple of issues for

12   me to decide.

13        MR. TYRRELL:  Yes.  I'm going to let Mr. Hopkins

14   address that.  The only issue that I can address that comes to

15   clearly to mind is really we would like there to be no more

16   confusion than necessary; and therefore, there to be one form

17   for check-off complaints.

18        It happened that Mr. Cannata, Mr. Grochow's office the

19   made revisions to that form after Mr. Napoli's office filed on

20   the old form.  So we now have a different form for the 45 than

21   for the ones that were filed before.

22        What we would like to try to do, without burdening

23   anyone unduly, is to make sure that everybody gets on the same

24   page; because as we go down the road and make motions addressed

25   to general things in the forms, I don't want to have to come

76FVWORC                    Conference

1   back and have people say the forms that we signed were

2   different.

3           THE COURT:  Whether they're the same or they're

4   different, they can't bury a substantive issue.  And I would

5   understand that the motions you are thinking about are not

6   addressed to the technical sufficiency of pleadings, but are

7   directed to issues that go to Statute of Limitations barring

8   the suits because of workmen's compensation, barring the suits

9   because of police compensation or firemen's compensation.  And

10  I shouldn't think that would be affected by whether there is

11  one form of check-off complaint or a different form of

12  check-off complaint.  If they are buried, we have to change it.

13          MR. EGAN:  Your Honor, just to go back to the first

14  part --

15          THE COURT:  I'm sorry, please give me your name.

16          MR. EGAN:  My name is Thomas Egan; I'm from Flemming

17  Zulack.

18          As to the motion practice, there may be a set of

19  motions that actually is, in fact, directed at whether or not a

20  particular cause of action was properly pled or could ever be

21  properly pled in these facts.  So that may be out there.  So I

22  don't want the Court to misunderstand --

23          THE COURT:  Tell me more.

24          MR. EGAN:  The labor law 241(6) claims, your Honor,

25  may be fatally defective.

76FVWORC                          Conference

1          THE COURT:  Because?

2          MR. EGAN:  Two different reasons.  We have to find out

3     exactly what work.  And we have not seen the check-off

4     complaints yet, so I don't know exactly what they say.  They've

5     been filed, but they have not been served --

6          THE COURT:  Remind me about a 241(6) issue.

7          MR. EGAN:  241(6) is the labor law provision that

8     imposes liability by status as opposed to whether there was

9     control of the work.

10          THE COURT:  In other words, an owner of property.

11          MR. EGAN:  An owner of property.  And to plead such a

12     cause of action, it has to be a specific kind of work:

13     Demolition, excavation.

14          THE COURT:  You're not going to learn that from the

15     pleadings; that's going to be a summary judgment issue.

16          MR. EGAN:  I'm just explaining the statute, your

17     Honor, and then I'll tell you what --

18          THE COURT:  Yeah.

19          MR. EGAN:  And that actually may be from the

20     pleadings, we may be able to demonstrate -- I can't tell you

21     till the check-off list, we may be able to demonstrate it

22     wasn't that kind of work, just on the face of the pleadings.

23     However, beyond that, you must plead a violation of a

24     regulation, okay, that was the proximate cause of the jury.

25     And it can't be a general regulation; it has to be a concrete

76FVWORC                        Conference

1    and specific regulation governing a specific conduct.  My

2    review of the master complaint indicates to me they have failed

3    to do that here.

4              THE COURT:  I think those are good points, Mr.

5    Cannata.  It's not of benefit to anyone to bury an issue when

6    it could be identified.

7              MR. CANNATA:  Judge, I'm not --

8              THE COURT:  It's not your problem, though, it's

9    Napoli's problem.

10             MR. CANNATA:  No, it's our problem.  It's everybody's

11   problem.  Let me just say, first of all, the difference between

12   the two check-off complaints was an address was incorrect in

13   the first check-off complaint, which we realized and we

14   corrected it.  That's the difference.

15             So there's no substantive difference between the

16   complaint that Mr. Napoli filed, the check-off complaint that

17   Mr. Napoli filed or the one that we filed.  And Judge, tomorrow

18   there may be a new plaintiff that comes along with a new

19   building, and that's going to be a new check-off complaint,

20   too.  So there's going to be variations in the addresses as we

21   go along.

22             But as far as the substantive issue --

23             THE COURT:  What do you mean by addresses?

24             MR. CANNATA:  Well, because there might be a new

25   building that's not in the master complaint now.  For example,

76FVWORC                          Conference

1    this building is not in the complaint.  Someone may have worked

2    here and gotten sick from working here; that client may come

3    into our office on Monday.  We don't know.

4              So we would have to then amend the master complaint,

5    add that building to the check-off complaint.  So there are

6    going to be variations and there are going to be different

7    additions as we go forward.

8              But getting to the issue of the substantive complaint.

9              Judge, the master complaint contains the specific

10   regulations that must be pled in connection with a labor law

11   241(6) case.  I don't know what counsel's referring to.  I have

12   the complaint in my hand.  I'll be happy to show it to him.

13   Judge, I've been doing this for 30 years, and it's in there.

14   It's ridiculous.

15             THE COURT:  I don't want to argue this now.

16   Mr. Cannata says it's in there.  Mr. Egan says it's not in

17   there.  I don't have a basis to resolve that.

18             MR. EGAN:  There are, in fact, regulations pled, your

19   Honor.  I just don't believe that under the governing law any

20   of the regulations would support the claims.

21             THE COURT:  So you make a motion.

22             MR. EGAN:  Right.

23             MR. HOPKINS:  Brief follow-up, your Honor, regarding

24   Mr. Cannata's point as to no substantive difference between the

25   two forms of check-off complaint.

76FVWORC                          Conference

1        The one form we received from the Napoli Bern form;

2   the other form, finalized, submitted with proposed CMO from

3   Mr. Cannata and Mr. Grochow.  Although we only received the

4   check-off complaints from Mr. Napoli's firm on late in the day

5   some time on Wednesday, and then thus there's not been a chance

6   to really look at them, one substantive issue does come up that

7   we've identified that is important to note.

8        At the last conference, your Honor instructed that

9   claims regarding the General Municipal Law were not properly

10  appropriate in this kind of master complaint for this docket.

11  Indeed, they are not included in the master complaint that

12  Messrs. Grochow and Cannata filed.

13        THE COURT:  I don't remember why I said that.

14        MR. HOPKINS:  The provisions under the GML related to

15  actions brought by firefighters and police officers who are for

16  the most part not involved --

17        THE COURT:  Because there's an exclusive remedy for

18  them.

19        MR. HOPKINS:  Correct, your Honor.  In the check-off

20  complaints we've received from Mr. Napoli's firm, however, they

21  make reference to such a claim in the master complaint that's

22  not there in the master complaint that Cannata and Grochow put

23  in, and indeed is not reflected in their form of the check-off

24  complaint, yet is reflected in the form of the check-off

25  complaint we got from the Napoli Bern firm.

76FVWORC                         Conference

1          So that leads us to have to make motion practice

2    undoubtedly down the line or I don't know how it quite gets

3    worked out, Napoli Bern firm needs to perform a check-off

4    complaint which is commensurate with the one that was finalized

5    by liaison counsel for plaintiffs in the 102 docket.

6          MR. CANNATA:  Your Honor, part of the difficulty that

7    we have is is that the Court's order required the complaints to

8    be filed before they were finalized.  And that was part of the

9    difficulty.

10         However, I understand that there are no firemen and

11   policemen plaintiffs in this docket.  And if you recall the

12   last conference, we addressed this issue and you ordered that

13   the 205(e) claims should be taken out.  And that's what we did.

14   And as far as I know, there aren't any --

15         THE COURT:  So if they are still in, I guess they'll

16   be fixed up.

17         MR. CANNATA:  It's not a problem, Judge.  There are no

18   plaintiffs that are claiming that basis for a suit.

19         THE COURT:  Mr. Hopkins.  Again, I don't have a basis

20   to resolve that.  There's a substantive point here.  The point

21   is that a fireman and a policeman are not allowed to sue the

22   City, I guess, for damages where they can recover the analog to

23   workmen's compensation.  That's the point, isn't it?

24         MR. CANNATA:  No, Judge, that's incorrect.

25         THE COURT:  Incorrect.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                    Conference

1          MR. CANNATA:  You're incorrect by that.  A fireman and

2    policeman can sue the City, but they have to allege a specific

3    violation of law, a rule.  But as far as I know, there are no

4    plaintiffs -- they do have some.  I'm being told they do have a

5    couple.  So, Judge, they have to straighten that out.

6          THE COURT:  What's the situation?

7          MR. DUBANEVICH:  Your Honor, William J. Dubanevich.

8    We do have firefighters and police officers who are in the 102

9    classification.  And that is why we had to allege violations of

10   the General Municipal Law.

11         THE COURT:  So what do you want me to do, Mr. Hopkins?

12         MR. HOPKINS:  Well, after all the Sturm und Drang that

13   we've had to get to this point to try to finalize pleadings, we

14   now have master complaint filed which does not include

15   allegations regarding General Municipal Law.

16         We have check-off complaints from Cannata and Grochow

17   that don't make reference to that because it's not there.  But

18   now, and really, I think, for the first time we're hearing from

19   the Napoli Worby Groner firm that they do have allegations to

20   make under those provisions, and they are not in the master

21   complaint.  So their check-off complaint refers back to the

22   master complaint that doesn't contain those types of claims.

23         THE COURT:  So the first assertion of the claim is the

24   check-off complaint, and presumably you're going to move to

25   dismiss them because of the issue of limitations.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                    Conference

1          MR. HOPKINS:  Undoubtedly.  And I'm sure other

2     substantive reasons, as well.

3          THE COURT:  Like what?  Just to give me a heads-up.

4          MR. HOPKINS:  I've not looked at the check-off

5     complaints, so I can't speak to whatever the clients are.  But

6     as to whether that is a proper vehicle for whoever these

7     people -- these plaintiffs may be; whether they can rely upon

8     this provision in the General Municipal Law to make such a

9     claim or not.  It goes beyond any type of statute-type issue.

10          THE COURT:  I'm not familiar with the law.  I don't

11     know what it is.  But I'll take the statement from Mr. Cannata

12     as expressing the law that if the City has violated a law that

13     firemen and policemen can sue.  You know, all this makes my

14     head kind of swim.  And I guess it begs the definition of

15     what's involved in the 102 and later the 103 cases.

16          Forgetting about the technical definition of the World

17     Trade Center, the way I looked at this is that 100 were the

18     cases that were focused mainly against the City, because the

19     Department of Design and Construction took the lead in the

20     cleanup of the World Trade Center.

21          102 were cases where there were private or public

22     homeowners independent of the Department of Design and

23     Correction, to the Department of Design and Construction.

24          And 103 is where plaintiffs did some work under the

25     jurisdiction of the DDC and other work under the jurisdiction

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                          Conference

1    of private and public property owners.  That's how I looked at

2    it.  I don't know if that's realistic or not.

3                MR. CANNATA:  Your Honor, that's our position, as the

4    Court just expressed.  However, when you issued the order for

5    103, we believe you made an error, and you went to the earlier

6    definition, the 100 definition, of what the World Trade Center

7    site was.

8                THE COURT:  I did?

9                MR. CANNATA:  You inadvertently did that.  And you did

10   that --

11               THE COURT:  It was the only definition that was at

12   hand.  Let me just tell you this:  I thought, and let me expose

13   my thinking so that if it's wrong, I want to know it's wrong.

14               I thought that DDC was in control of the cleanup

15   operations with regard to all the property identified in that

16   first order.  And I think I took that definition from the

17   Victims Compensation Fund.  I don't remember exactly where I

18   took it from, but I think I took it from there.  And that may

19   be the cause of the problem, I don't know.  And I don't know

20   what is feasible here.

21               MR. CANNATA:  Well, the practical effect of it is,

22   Judge, that by using the definition from 100 that you used that

23   was made before 102 was created, you've essentially put almost

24   all of the plaintiffs from 102 back into the 100 case and thus,

25   the 103 case.

76FVWORC                          Conference

1          THE COURT:  I didn't intend that.

2          MR. CANNATA:  I know you didn't intend it, Judge.  But

3     I'm just telling you, for example, with our cases, I have our

4     45 or so plaintiffs, we would end up with about 35 of them into

5     103, and only a handful, eight or nine or ten, in 102.  And I

6     don't think that's what the Court intended.

7          THE COURT:  No, it's not what I intended.  I also

8     raised the issue of the lead counsel issues with regard to 102

9     and 103.  Because it was my conception that the 102 case had

10    involved lawsuits against others in the City through DDC.  And

11    therefore, I thought it not particularly appropriate that the

12    same plaintiffs' lawyers are the same defendants' lawyers be

13    functioning on 102.  And I've never really resolved that issue.

14         Mr. Tyrrell.

15         MR. TYRRELL:  Your Honor, I'd like to jump an issue

16    back, as we've moved ahead to the issue of whether there should

17    be broader representation at the level of the liaison, not

18    lead, but liaison counsel.  I'd like to speak to that later,

19    but I'd like to respond to Mr. Cannata's point.

20         We have been operating for more than two years now

21    with a particular definition that was born in the 100 docket

22    that your Honor created as to what was the geographic area, the

23    16 acres covered by that docket.  But it is not true when you

24    created 102, you'll remember we objected to it at that time, we

25    said, Don't bother breaking them up; keep them altogether.

76FVWORC                      Conference

1    We're over that.  But when you created 102, you took the

2    reciprocal of that definition; you said other things --

3              THE COURT:  That's right.

4              MR. TYRRELL:  -- in that 16 acres.

5              THE COURT:  That's right.

6              MR. TYRRELL:  Now, that made great sense.  Because

7    whether the claim occurred in lower Manhattan or occurred, as

8    Mr. Cannata says, here in this courthouse, and frankly, I think

9    the only one in this courthouse who possibly got sick is your

10   Honor for working too hard on the case.  But that's a different

11   kind of claim.

12             THE COURT:  I need a remedy.

13             (Laughter)

14             MR. TYRRELL:  You need a remedy.  I think it's more

15   than over-the-counter, your Honor.  If we go back now and

16   change, so I'm now focused exactly on that issue --

17             THE COURT:  My wife said retire.  I said the case will

18   follow me.

19             (Laughter)

20             MR. TYRRELL:  If we go there now, okay, we're going to

21   ditch all of the definitions and organizational stuff that we

22   had.  But then when you look at what Mr. Cannata proposes in

23   his letter, which is something that is supposed to be better,

24   and of course, you said nobody's substantive rights is going to

25   be affected by this.  This is just to help get it organized.

76FVWORC                          Conference

1          His definition will turn on whether the City of New

2     York is a defendant in each case.  That makes no sense

3     whatsoever.

4          So in his definition, someone who worked on the pile

5     and sued only Tully, it would no longer be a 100 case, because

6     the City of New York would have to be in it, according to his

7     proposed --

8          THE COURT:  If someone worked on the pile and worked

9     for Tully --

10         MR. TYRRELL:  And didn't sue New York, too, it

11    wouldn't any longer be a 100 case.

12         THE COURT:  Well, who would he sue?

13         MR. TYRRELL:  I don't know.  It's amiss.

14         MR. CANNATA:  I didn't say that, Judge.

15         MR. TYRRELL:  We don't need to change this.

16         MR. CANNATA:  Judge, excuse me.  I didn't say that in

17    my letter.  I said outside on the mound.

18         THE COURT:  Stop.  Stop.  What's the justification of

19    having a different collection of cases in 102 from what I have

20    in 100?  I'll answer it.  It's because it's a different

21    defendant.

22         The City, except as an owner of property, is not

23    involved.  The violations alleged of the labor law were by the

24    managers and owners of the specific properties.  I mean, folks,

25    that's what I had in mind.

76FVWORC                    Conference

1        MR. TYRRELL:  And your Honor, at this point we're not

2   suggesting we change that.

3        THE COURT:  The definition.

4        MR. TYRRELL:  It is Mr. Cannata who is suggesting --

5        THE COURT:  My definition.

6        MR. TYRRELL:  -- that your definition be changed.  So

7   now if someone worked, and let's take the Deutsche Bank

8   building as an example.  It was under the control, we believe,

9   of the DBS for the cleanup.  It was completely -- it wasn't not

10  banned, it was destroyed.

11       THE COURT:  DBS?

12       MR. TYRRELL:  I'm sorry, Department of Design and

13  Construction.

14       THE COURT:  I don't think sanitation was involved.

15       MR. TYRRELL:  Right.  Now, that building was never

16  reoccupied, okay.  So as to that building, if you now took his

17  definition and transferred that out because it was originally a

18  private building, we would be creating yet more confusion.

19       THE COURT:  I think DDC was involved with Deutsche

20  Bank.

21       MR. TYRRELL:  That's why it should stay in 100.

22       THE COURT:  That's why Verizon is in 100 also.

23       MR. TYRRELL:  And you've already ruled on those

24  applications as to Verizon, and I know Verizon's counsel wants

25  to speak to that.  But if you followed Mr. Cannata's suggestion

76FVWORC                         Conference

1   now, all of the Verizon cases and the Verizon building would

2   move to the 102 docket.

3        THE COURT:  I've taken the position throughout that

4   substantive rights should not be affected by how I categorize

5   the case.  Because I never really felt confident in my

6   definitions.  And I didn't want substantive rights to be

7   affected by it.

8        It was my impression that Deutsche Bank, which is

9   across the street from is it One or Two World Trade Center, was

10  treated like it was part of the World Trade Center in terms of

11  the cleanup operations.  But the buildings on Rector Street, to

12  draw an example, two blocks away, three blocks away, I don't

13  remember exactly, should not be in the same category as the

14  World Trade Center.

15       Now, you ask what about the buildings in between, the

16  church, for example, across the street, the other way to the

17  World Financial Center.  The World Financial Center is in the

18  definition, I see.  I don't know why.  I guess DDC functioned

19  there, so maybe that's why.

20       MR. TYRRELL:  One of the reasons is debris fell into

21  those buildings, structural debris that was the same type

22  that's being cleaned up on the ground fell over and went right

23  into the Deutsche Bank building.

24       THE COURT:  You know, I don't really care, except to

25  the extent that the category is driving a different result from

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                    Conference

1    that which we normally obtain.  And I need to be alerted to

2    that when it happens.

3         Why I challenge your leadership, Mr. Tyrrell, it's not

4    because I don't admire your leadership.  And I will tell you

5    very candidly, although we've had our differences in these

6    cases, one way that I've been able to administer the cases is

7    because of the hard work that you and Mr. Hopkins and your

8    other colleagues have put into this case.  I'm indebted to you.

9    And I have no doubt but that 102 and 103 will benefit from your

10   leadership, as well.

11        But what I'm bothered by is that as I look at these

12   cases, DDC was not involved.  And it should not be taken to

13   task for providing masks or not providing masks, or giving

14   education or not giving education.  If that's the case, why are

15   you involved?  Why do you care, except as a friend of the

16   Court.  I'm glad to have your friendship, but there's a

17   conflict issue.

18        MR. TYRRELL:  I'll tell you why I care, and then I'll

19   tell you why you shouldn't worry about it.  Okay?

20        THE COURT:  Okay.

21        MR. TYRRELL:  First, I care because according to my

22   colleagues over here, the City of New York in the 102 docket is

23   currently in 65 to 95 actions.  I am their counsel.

24        THE COURT:  As owner?

25        MR. TYRRELL:  We don't have the specific complaints

76FVWORC                        Conference

1    yet, but we assume so, yes.  As either a tenant or an owner,

2    yes, in 65 to 95 of those actions.  And is in a whole bunch of

3    actions that will be in that status in the 103 docket, as well.

4              THE COURT:  By all means you have to be in the case,

5    but there have to be others.

6              MR. TYRRELL:  We completely agree with that, let me

7    tell you the --

8              THE COURT:  No one is stepping up.

9              MR. TYRRELL:  Well, that's the problem.  But let me

10   tell you why you don't have to be concerned about the thing you

11   put in your order, which is the issue of conflict.  Why?

12   Because when you serve as liaison counsel, the general law is

13   it isn't a conflict; your duty of loyalty still runs to your

14   client.  You have a duty to the Court and everybody else to

15   serve as liaison --

16             THE COURT:  I accept that, Mr. Tyrrell, as long as

17   there are others in the group to protect different interests.

18             MR. TYRRELL:  Couldn't agree with you more.  But one

19   last point, because I went and looked it up.  You, very

20   smartly, in the order you entered when you created liaison

21   counsel, specifically said in CMO No. 2 way back when that

22   there would be no conflicts by serving in that position.

23             So only the issue you have now addressed is the right

24   issue, which is would some other people please step up so that

25   there is a broad enough representation.

76FVWORC                          Conference

1          Now, we met with all -- on the defense side,

2    plaintiffs can speak for themselves, with defense counsel; we

3    meet with them regularly.  And we said to them, number one,

4    like the former mayor used to say, Are we doing a good job for

5    you?  What else can we do?  Okay.  And we then said,

6    particularly in light of your order, we said, Is there anyone

7    else here who would like to stand up and serve as co-liaison

8    counsel?

9          Now, this is not an invitation, frankly, for everybody

10   to come in and just say, Yeah, that would be a nice job.  You

11   should be representing a defined group:  Building owners,

12   tenants.  Some group so that you can speak for a number of

13   people.

14          THE COURT:  I would like your recommendation to

15   enlarge the committee.  I want you to have friends, and I don't

16   want to relate only to you on 102.

17          MR. TYRRELL:  I couldn't agree more.  I'm going to

18   re-solicit and ask for volunteers.

19          THE COURT:  Or I'll appoint.

20          MR. TYRRELL:  Or you can appoint, okay.

21          THE COURT:  Who are the largest interests involved?

22          MR. TYRRELL:  Right.  We can identify that for you.

23          THE COURT:  Well, if there are people in the room,

24   you'd better step up; because otherwise I'm going to take the

25   position that you're not properly being active in the case, and

76FVWORC                        Conference

1    I'll draw inferences from it.  So I want those views to be

2    solicited; and I want to have a committee established.  And I'm

3    going to be very firm about that.

4         The issue, I think, is of less concern with the

5    plaintiffs.  There is a concern, but Mr. Cannata and

6    Mr. Grochow are there, and that solves the problem.

7         I also want you all to remember that although I don't

8    raise it all the time, that there is a jurisdictional issue

9    which will not go away.  And Judge Keerce in -- I forget the

10   name of her case; my case was Hickey.  And the case that

11   affirmed me in reversal was *McNally*, talking about two bases of

12   exclusive jurisdiction.  One had to do with who was paying the

13   bill, and the other was the nature of the claim.

14        And the language is broad enough so that I don't have

15   an issue conscience in dealing with 102.  But at some time that

16   issue may come up again.

17        I thought to myself that since discovery is cutting

18   across various different fields and people, and since it makes

19   a great deal of sense to have someone familiar with the case

20   and all of the cases, presiding over it, and trying to achieve

21   the maximum kind of efficiency, that I don't want to raise the

22   issue at this point in time.  But somebody is likely to raise

23   the issue along the way, if the cases are not settled, and we

24   can't plan that they will be settled.  So you need to know that

25   and be aware of it and never let it get out of mind.

76FVWORC                    Conference

1          Okay.  There is a lurking issue also in whether the

2     stay ordered by the Second Circuit in the 100 proceedings

3     should affect what we do in 102 and 103.  My answer is that

4     they should not.  But it may be that others will disagree and

5     will try to make various motions to reflect their view.  Those

6     are legitimate motions, and I'll deal with them.

7          My view is, and I've thought about it a lot, is that

8     the stay does not apply.  And of course, the definitions also

9     interfere with clear analysis, because the definition of 100 is

10    too broad.

11         I'd like to postpone redefining the issue, because I

12    think deciding on the basis of who is the defendant and for

13    what reason raises too many complications.  But my working

14    definition is not going to be that which is expressed in

15    written form.  It's how I expressed it before.  It's where the

16    City did not function through the DDC on what we call "the

17    pile."  And I recognize that adjacent properties like Deutsche

18    Bank and Verizon and World Financial Center are likely to be

19    included.  And more distant properties like the Rector Street

20    buildings are probably excluded.  And there are numbers of

21    buildings in between where I don't know the answer and I won't

22    know the answer, and probably you won't know the answer until

23    there has been some discovery.

24         Okay.  Having said that --

25         MS. STEVENSON:  Your Honor?

76FVWORC                          Conference

1              THE COURT:  Yes.

2              MS. STEVENSON:  Lee Ann Stevenson on behalf of

3    Verizon.  If I might ask for a clarification of that last

4    statement.

5              We are named in about 6,000 cases in the 100 docket

6    currently, and we've been named as a defendant in about 300

7    cases in the 102 docket.

8              We believe, based on your Honor's definition and as

9    you discussed at length today, that we belong in the 100

10   docket, because we were the cleanup efforts, as well --

11             THE COURT:  I believe you belong in no docket.

12             MS. STEVENSON:  We believe that we have no liability,

13   correct.  And we believe that our immunity motion, which we

14   intend to file at the correct time, will establish that we are

15   entitled to immunity, because we were acting pursuant to

16   federal, state, and city direction to restore the phone lines,

17   as well as data lines to lower Manhattan in the days and weeks

18   and months after the September 11th attack.

19             We had read your Honor's first CMO in the 103 docket

20   establishing the CMO -- or establishing the 103 docket to read

21   that claims would be stayed against the 100 defendants no

22   matter where they were filed.  So in our case, those claims

23   that are now in the 102 docket or the 103 docket would still be

24   stayed against us.  In particular, paragraph 9 states that

25   claims against defendants who are within the definition of the

76FVWORC                        Conference

1    World Trade Center site as defined in Case Management Order No.

2    3 shall be stayed until the Second Circuit resolves the pending

3    appeal.

4              THE COURT:  I don't accept that view, because I don't

5    know whether all you worked in all the buildings that is

6    encompassed in the claim of immunity.  So I'm not going to

7    enlarge the stay.  You're in.

8              MS. STEVENSON:  We'll be expected to go forward with

9    the motions --

10             THE COURT:  Yes, ma'am.

11             MS. STEVENSON:  -- in the 102.

12             THE COURT:  As far as I'm concerned, yes.  And as I

13   said before, my policy is that whoever wishes to make motions,

14   can make motions.  It's much better to have a schedule, but I

15   don't have any premotion conferences.  However, a motion is not

16   and does not operate as a stay.

17             MS. STEVENSON:  What about, related to that, the

18   plaintiffs have asked for or have made efforts to transfer

19   cases that are currently in 100 to the 102 docket.  And I

20   believe that is, especially given this clarification, an effort

21   to essentially lift the stay on cases that are properly in the

22   100 docket.

23             THE COURT:  I can't speak in the abstract,

24   Ms. Stevenson.

25             MS. STEVENSON:  Well, there were letters filed, and

76FVWORC                          Conference

1    you had indicated in an order that it would be on the agenda

2    for today.

3            THE COURT:  It is.  So what would you like me to do?

4    You would like me to stay everything.

5            MS. STEVENSON:  No, I would like you to keep the cases

6    that are currently in the 100 docket in the 100 docket, and

7    deny Mr. LaPaolo's May 16th request to transfer the cases

8    listed on his Exhibit A.

9            THE COURT:  Transfers are going to require a motion on

10   notice justified by papers, so that I can have opposition and

11   make as intelligent of a decision as I can.

12           If there's no practical consequence, who cares?  If

13   there is a practical consequence, like the operation of the

14   stay, then I have to make a decision.

15           I guess we're down to four.  Let me stay with the case

16   management order.  I started reading the case management order.

17   There are parts of it that I don't understand, parts of it that

18   don't seem to me to make sense.  And I know that there's been a

19   lot of negotiations.  And I'd like to go over it with a

20   representative group, maybe two lawyers, maybe three or four,

21   but a small group, so that I can understand it better and make

22   whatever decisions need to be made.

23           Mr. Tyrrell, you need to get someone else who doesn't

24   represent the City.  Mr. Hopkins, you need to get someone else

25   who doesn't represent the City to go with you.

76FVWORC                        Conference

1          MR. HOPKINS:  We can put a group together, your Honor,

2     if you'd like.

3          THE COURT:  Pardon?

4          MR. HOPKINS:  I'd be happy to talk with plaintiffs'

5     counsel, get a list of some people together and make a

6     suggestion to your Honor as to who depend that working group

7     with me.

8          THE COURT:  Okay.  And then let Mr. Sutherland know,

9     and we'll have a meeting and we'll work out a CMO.

10         MR. HOPKINS:  Fine.

11         THE COURT:  Now, the motions that need to be addressed

12    have been identified to some degree.  What I'd like you to do,

13    Mr. Hopkins, is to present a schedule of the motions you wish

14    to make, providing dates, the opposition dates, reply dates,

15    which should be no more than a week or so after the opposition,

16    and then we'll schedule argument.

17         Mr. Sutherland shows that there is a schedule in the

18    letter of June 13th.  Well, just give it to me separately as a

19    scheduling order, and I'll schedule it and we'll do it.  And

20    identify motions, just give me a heads-up what do you have

21    there.  You've got the issue of the policemen and the firemen,

22    which may be clarified by discussions with the plaintiffs.

23    You've got the workmen's compensation cases, which, again, may

24    be clarified.  But maybe that's premature to make these motions

25    till you've had some discovery.  You're not going to waive

76FVWORC                          Conference

1    these motions.

2         MR. TYRRELL:  Your Honor, we think a number of them

3    can be made really without discovery.  And some of them may

4    involve discovery.  We propose to discuss that with counsel and

5    have limited discovery, if it's needed.

6         THE COURT:  I'll leave it to you.

7         MR. TYRRELL:  That's fine.  Our goal, so you know, is

8    there are now 270 defendants named in the 102 docket.  Our goal

9    is to try to figure out who really belongs there before we get

10   too deeply into that for all 270.  So we'll work that out and

11   get back to you.

12        THE COURT:  Right.  And I wanted to have specificity

13   of the plaintiff:  When the plaintiff worked, where the

14   plaintiff worked, for whom the plaintiff worked, and maybe some

15   other things, as well, which supposedly are coming into the

16   check-off complaints.

17        All right.  So we've covered three, we've covered

18   four, we've covered five.  And what's the discovery issue,

19   Mr. Cannata?

20        MR. CANNATA:  Yes, Judge.  We mentioned earlier we'd

21   like to proceed with obtaining the insurance information from

22   each of the defendants.

23        THE COURT:  Any objection to that?

24        MR. TYRRELL:  Yes, your Honor.  I mean we dealt with

25   this last time.  When it was raised last time you said, Look,

76FVWORC                          Conference

1    make those motions so we know who is left.  And if there's

2    limited discovery that has to be done for that motion, that's

3    fine.

4          But the insurance discovery has nothing to do with the

5    motion.  And to make 270 corporate defendants, some of whom are

6    the size of major financial institutions, start providing or

7    figuring out what all their insurance coverage is until they

8    know for sure they're really stuck in this mess, is just unduly

9    burdensome.

10          THE COURT:  They undoubtedly had already done that

11   because they've made claims.  I don't think it's burdensome.  I

12   think it will help move these cases along.  And I'm partial to

13   that motion.  I think it's a sensible thing to do, and it

14   should be done.  I so order it.

15          What's the issue with 21 MC 103?

16          MR. CANNATA:  We addressed that, your Honor, as to

17   what's the definition of 21.

18          THE COURT:  Let me step back with insurance

19   information.  What do you need, Mr. Cannata?

20          MR. CANNATA:  We'd like to see the declaration sheets,

21   Judge, for each named defendant with the property that they are

22   being sued four.

23          THE COURT:  Declaration sheet is typically that which

24   the insurance broker provides to the insured?

25          MR. CANNATA:  Right.  It gives you what the coverage

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                        Conference

1   is, it tells you what the property location is.  It's just a

2   single piece of paper.

3           THE COURT:  That's a fairly limited --

4           MR. CANNATA:  We don't want boxes of information at

5   this point, Judge.

6           MR. TYRRELL:  Let's be sure we understand that.  For

7   the property that's involved, whatever insurance coverage

8   applies to that property, that's what he's looking for, not the

9   global coverage for X bank, if they have a global policy.

10          THE COURT:  If they don't have a per property

11  policy --

12          MR. TYRRELL:  Then we'll deal with that.  But if we

13  have a separate policy that focuses on a particular piece of

14  property that is the property at issue, that's what we're going

15  to produce.

16          THE COURT:  Mr. Cannata.

17          MR. CANNATA:  That will be acceptable, Judge.  That

18  sheet will also give us the other named insureds and the

19  locations.  And that's really all we want.  Any coverage for

20  that building, Judge, for the activities of that building.

21  That's all it is.  That's all we need.  And the declaration

22  sheet should have that.

23          THE COURT:  And it should be for tenants, as well as

24  owners.

25          MR. CANNATA:  The tenants who are sued will probably

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                        Conference

1    have their own policies.  They're sued; they're defendants

2    also.

3              THE COURT:  Typically, the tenants will have insurance

4    that will list the owners as additional insureds.

5              MR. CANNATA:  Right.  The tenants will have policies,

6    the owners will have policies, and people who are working in

7    the property who have been named as defendants will also have

8    policies.

9              THE COURT:  So it's a little larger than 100.

10             MR. CANNATA:  It's just a declaration sheet, Judge.

11             MR. TYRRELL:  It's not really.  Because they sued the

12   tenants, too, so the tenant produces its half, the owner

13   produces its half; it's the declaration for that building.

14             THE COURT:  What's your reasonable time to produce?

15   Thirty days?

16             MR. TYRRELL:  Can we try 45 days?  I've got 270

17   different defendants --

18             THE COURT:  Forty five days.

19             MR. TYRRELL:  Forty five days?

20             THE COURT:  Forty five days.  By August 10 is a little

21   more than 45 days.  Mr. Hopkins.

22             MR. HOPKINS:  Your Honor, I was turning to 21 MC 103.

23   And just one point I want to raise there.  I believe

24   Mr. Cannata correctly covered, I think, other issues that

25   related to that.

76FVWORC                         Conference

1           A recent order by the Court, in referring to the fact

2     that check-off complaints have not yet been finalized in terms

3     of the forms of it, nor deadlines set for when those should be

4     filed, your Honor made reference to a master complaint 103.

5     And I think that may have created some confusion,

6     unfortunately, among the parties.

7           We understood your Honor's order establishing 103 as a

8     separate docket to indicate that there was to be a form of

9     check-off complaint covering the plaintiffs in that docket, but

10    that that check-off complaint was then to refer to the master

11    complaint in 100 and the master complaint in 102, given that

12    the 103 docket is created to house those that straddle those

13    two dockets.

14          As a result, I believe plaintiffs are in agreement

15    with me, maybe they aren't, I believe that there's not a need

16    for a master complaint in 103, as the two other master

17    complaints would be the operative ones to determine the

18    check-off.

19          THE COURT:  That's what I envision.

20          MR. HOPKINS:  Okay.  So I just want to make sure

21    that's clear, your Honor.  Thank you.

22          THE COURT:  One of the points that you made interested

23    me.  What happens when there's a check-off complaint that

24    identifies a party that was not identified in the master?

25    There should be no relation back in terms of related issues.

76FVWORC                          Conference

1        MR. GROCHOW:  If I may, your Honor.  That's one of the

2    items that we can deal in the conference on the CMO.  It's

3    actually that specific item is addressed specifically in the

4    proposed CMO.

5        THE COURT:  Well, I thought to doing defense's

6    approach because there's a big substantive issue that turns on

7    it.

8        MR. GROCHOW:  If somebody walks in and says I worked

9    in a particular building, if that's what you are referring to,

10   that is not currently named in the master complaint and

11   therefore, in the identical list in the check-off complaint, we

12   provided for a provision of amendment of the master and

13   check-off through a consensual agreement with defense counsel

14   that we would notify them that we want to add a building.  And

15   if they had any objection --

16       THE COURT:  They reserve it.  They don't agree.

17   They'll allow you to amend, but subject to defense.  They're

18   not agreed to a relation back, right, Mr. Hopkins?

19       MR. HOPKINS:  I believe the CMO provides for the

20   operation of the federal rules, which is by consent or by

21   motion, which is what Mr. Grochow has outlined.

22       THE COURT:  The question is whether you agree to a

23   relation back.

24       MR. HOPKINS:  No, we do not, your Honor.

25       THE COURT:  That's what I understood.



76FVWORC                         Conference

1          MR. GROCHOW:  You're referring to a date?

2          MR. HOPKINS:  Right.

3          MR. GROCHOW:  Right.  We've actually discussed this in

4     our conferences.  And the operative date for the

5     newly-brought-in defendant for that particular plaintiff may be

6     different from the original date of the original filing.  This

7     has been a matter of discussion.

8          MR. HOPKINS:  I believe Mr. Grochow is recognizing

9     that there wouldn't be relation back.  If he has to make a

10    motion to amend the master complaint for a defendant that's

11    just shown up, then that's going to be the operative date for

12    that defendant, the date of that amendment.  It's not going to

13    be anything earlier.

14         THE COURT:  Let me tell you how I want to do this.  I

15    don't want to get involved with motions to amend at this point

16    in time.  They should be free.  But where parties are added,

17    that's different.  That's Rule 21; that's not Rule 15.  When

18    parties are added, I believe there is not a relation back.

19         Now, I don't need Rule 21 motions either.  But the

20    rule of thumb that I'm proposing be incorporated in the case

21    management order is that where a new party is added, the filing

22    date is the date of addition.  And therefore, there may be

23    agreement that a motion can be dispensed with, but the motion

24    is subject to -- the agreement is subject to defenses.

25         MR. TYRRELL:  I think your Honor may mean service

76FVWORC                          Conference

1   date, right?

2          THE COURT:  No, filing date.

3          MR. GROCHOW:  Filing date.

4          MR. TYRRELL:  I'm sorry, for the purposes of the

5   Statute of Limitations?  Yes.  Right.

6          MR. GROCHOW:  This is something we've actually agreed

7   to, your Honor.  We'll make sure it's clear in the CMO.

8          THE COURT:  Okay.  I just didn't want to pass it,

9   because rights would be affected, and I don't want an argument

10  that I said something or led someone to believe something that

11  would create a toll.  There's not going to be a toll.

12         All right.  Impleaders.

13         MR. CANNATA:  Well, the impleader issue, Judge, we

14  already discussed briefly.  And that is whether the defendants

15  should now -- now that they've been advised of the specific

16  employers for each plaintiff, whether they should be urged to

17  bring the third-parties into the lawsuit.

18         We would request that the Court Order that, or at

19  least give a deadline for that, because we want to get these

20  parties into the lawsuit.  None of the employers are currently

21  in this lawsuit.  There are maybe 50 defendants, 50 potential

22  defendants who should be brought into the lawsuit.  And they

23  are going to be major players in this lawsuit as the employers.

24  So the sooner we get them into the suit --

25         THE COURT:  So you want a shortened impleader date.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

76FVWORC                          Conference

1          MR. CANNATA:  I would like to --

2          THE COURT:  What do you want, Mr. Hopkins?  Every time

3    I call on you, I call on the wrong person.  I call on Tyrrell,

4    Hopkins stands; I call on Hopkins and Tyrrell stands.

5          MR. TYRRELL:  Twiddle Dee/Twiddle Dum.  We talked

6    about impleader last time.  And last time you said --

7          THE COURT:  You always embarrass me.  You have 100

8    percent memory of what we discussed last time, and I draw a

9    blank.

10          MR. TYRRELL:  I knew it was coming; I looked it up, if

11    you want to know the truth.  Actually, the real truth is

12    somebody else looked it up for me.

13          And the answer you gave then was impleader is up to

14    the defendants.  Now, look what's going to happen here.  And

15    this is exactly what we've done in the other docket with

16    respect to impleader.  We've already got 270 defendants who

17    want to make their motions to try to get out.  To now force 270

18    defendants to implead anybody else that they think may be

19    liable, will greatly multiply the number of parties in this

20    case; whereas if some significant number of the 270 get out,

21    we're never going to have to get all of those other parties in.

22          THE COURT:  I'm torn by this, Mr. Tyrrell.  If I have

23    dates for impleaders, everybody's going to be impleaded, and it

24    will end up with the airlines' terrorists.  And I don't think

25    that's useful for anybody.

76FVWORC                          Conference

1          On the other hand, if I don't have a date, then at

2    some point in time when people are impleaded in, particularly

3    if they have a large stake in the action, they're going to say

4    I'm not bound by what's happened.

5          MR. TYRRELL:  And the course you have already laid

6    answers that.  We're going to make these motions.  Parties in

7    the relatively short course are going to get in or out.  Then

8    what's going to happen is full-blown discovery will start.

9    That's the deadline.

10         THE COURT:  I don't think I want to have an impleader

11   date.  Nothing is lost.  Since you're suing for liability that

12   is or may be imposed, the date for suing doesn't accrue until

13   you suffer a loss.  And you're not suffering a loss, not for a

14   long time, unfortunately.  I'm not saying unfortunately about a

15   lawsuit, but unfortunately in relationship to how long the

16   proceedings will take.  I think, Mr. Cannata, I should not

17   impose that deadline at this time.

18         MR. CANNATA:  Perhaps the Court will revisit the issue

19   after these motions are made.  And if there are parties that

20   are out, fine.  If they are not going to be out, then maybe we

21   can bring them all in.  Because I would hate to see discovery

22   proceed piecemeal, Judge.  That's what we're going to have;

23   we're going to have to do everything twice.

24         THE COURT:  Bring it up.  You should know that in 97

25   I've been adjourning that date every six months.

76FVWORC                    Conference

1          MR. CANNATA:  That's a different situation.  In this

2     case, the employers will be brought into the suit either now or

3     six months from now.

4          THE COURT:  It is.  But you know, Mr. Cannata once we

5     do the first one, there's no stopping.  This is a process that

6     goes on; so I'm reluctant to start it.  I'm reluctant to create

7     inertia.  But revisit it.

8          The last item on the agenda, the appointment of the

9     special master.  Why?

10         MR. CANNATA:  Two reasons, your Honor.

11         THE COURT:  It was such a popular thing I did last

12    time, that they lasted two weeks.

13         (Laughter)

14         MR. TYRRELL:  Long enough, your Honor, for us to get a

15    bill, I would note.

16         MR. HOPKINS:  Which we're delighted to pay, your

17    Honor.

18         THE COURT:  We'll come back to it.

19         MR. CANNATA:  Judge, perhaps we can just defer that

20    also until after the motions.  There's no real point.

21         THE COURT:  I like that idea, since it's Friday

22    afternoon.  Is there anything else anybody wishes to bring up?

23         MR. EGAN:  Your Honor, just one thing, your Honor.

24    These check-off complaints have been filed, but they haven't

25    been served.

76FVWORC                    Conference

1          THE COURT:  Cannata says he's getting the CD.  He's

2     going to give it to everybody.

3          MR. EGAN:  I understand that.  I don't know what the

4     Worby Groner firm is planning on doing.  I know there were

5     people who had been e-mailing me, asking when will we be

6     getting the check-off complaints.  I'm merely asking to find

7     out so that they will know.

8          MR. BERN:  Your Honor, we'll be doing the same thing,

9     by CDs.

10          THE COURT:  What are the dates?

11          A VOICE:  Liaison counsel got one yesterday.

12          THE COURT:  What I want is to have this meeting on the

13     case management order soon.

14          MR. BERN:  Your Honor, we served liaison counsel

15     yesterday.

16          MR. EGAN:  My firm, as far as I know, did receive

17     them, but it may not have gotten to me.  But, in any event,

18     everybody else would like to know.

19          THE COURT:  It's in the mail, Mr. Egan, along with

20     your monthly check.

21          MR. EGAN:  I guess other counsel are wondering,

22     because service on us doesn't constitute service on them.

23          THE COURT:  That's one of the reason for having a

24     liaison committee, folks.  You can't just sit back; you got to

25     get involved.

76FVWORC                    Conference

1          MR. EGAN:  They are actively asking when are we going

2     to get them.  That's why I'm rising to ask.

3          THE COURT:  Maybe one or two of them will join your

4     committee; then they will be circulating much more effectively.

5          MR. EGAN:  I understand, your Honor.  But they would

6     like to see the check-off complaints.  And all I'm asking is

7     can they give me a time frame.  I'm not even asking for a

8     deadline.

9          THE COURT:  Said he gave it to you yesterday.

10          A VOICE:  Us.

11          MR. EGAN:  The other defendants who want to know what

12     cases they are in.

13          THE COURT:  When you guys get onto a committee and

14     start participating, I'll have more sympathy.  You're taking a

15     free ride on Mr. Tyrrell, and I don't want it because it's not

16     good for the case.  So as soon as you form a committee, I'll be

17     much more sympathetic to your needs.

18          MR. GROCHOW:  Your Honor, when we filed our check-off

19     complaints yesterday, we provided the Clerk of the Court with

20     the CD with all of them on it; so that it's just a matter of

21     reproducing the CD.  It's no major deal.

22          THE COURT:  Who's going to reproducing it?

23          MR. GROCHOW:  We can take care of making copies.

24          MR. EGAN:  I'm sorry, I'm still wondering, your Honor,

25     is there any time frame for the Napoli firm to provide people

1    with complaints?  Because we cannot progress unless the other

2    defendants know what cases they are in.

3              THE COURT:  Mr. Dubanevich, Mr. Groner, what do you

4    say?

5              MR. GROCHOW:  Your Honor, if I may.  If we could get

6    into this CMO meeting with you relatively shortly, that's an

7    item that we can put right into the CMO to put all of this to

8    bed.

9              THE COURT:  What I would like is to have a small

10   liaison committee, and the plaintiffs can take a box of CDs and

11   give it to the liaison committee, and it would be distributed.

12   In fact, if you can get a web page and do it, then it would be

13   everybody's responsibility to link into the web page.  CDs are

14   obsolete.  Only lawyers deal with them.

15             MR. EGAN:  One of the problems with liaison --

16             THE COURT:  CDs are dying.  All the music stores can't

17   sell any CDs anymore because you can hook into iTunes.

18             MR. EGAN:  As a practical matter, one of the problems

19   with liaison counsel distributing CDs, is although we know the

20   identity of many of the defendants, we do not know the identity

21   of who's representing all of the defendants.  And in some

22   cases, because the check-off complaints are going to be naming

23   new parties that weren't recently served with the summons and

24   complaint, they may, in fact, have to be served as a process.

25             THE COURT:  Mr. Dubanevich, give me a couple of names .

76FVWORC                      Conference

1    of large interests who are defendants.

2           MR. DUBANEVICH:  Battery Park City Authority.

3           THE COURT:  Not city, not city.

4           MR. DUBANEVICH:  Silverstein Properties.

5           THE COURT:  Not that either.

6           MR. DUBANEVICH:  Merrill Lynch.

7           THE COURT:  Merrill Lynch.  Who represents Merrill

8    Lynch?  What's your name?

9           MS. COHEN:  Judith Cohen from Dickstein Shapiro, your

10   Honor.

11          THE COURT:  Dickstein Shapiro is a fantastic firm.

12          MS. COHEN:  Thank you.

13          THE COURT:  I always loved the way they litigated.

14   Why don't you join Mr. Tyrrell's committee?

15          MS. COHEN:  Our client has not authorized it; it's

16   something we'll have to take up with our client, your Honor.

17          MR. BERN:  Your Honor, Verizon.

18          THE COURT:  Verizon is a special case.  They're not

19   going to join.  They want to be themselves.  It's probably not

20   a bad idea to be on all the committees, Verizon.

21          MR. GROCHOW:  One Liberty Plaza has a greater stake

22   than many.  I'm not sure who represents --

23          THE COURT:  Who represents One Liberty?

24          MR. SMITH:  I do, Judge.  William Smith; Faust, Goetz,

25   Schenker & Blee.  I am, unfortunately, in the same position as

76FVWORC                          Conference

1    Merrill.  I would take it back to them and see what they want

2    to do.

3             THE COURT:  I think it might be good voluntarily to

4    join before the Court starts appointing.

5             MS. COHEN:  Understood.

6             MR. SMITH:  Understood.

7             THE COURT:  You've got a lot at stake here, the

8    insurance company anyhow.  Your clients don't care.  The

9    insurance company pays.  Since the insurance company is paying

10   for your defense, tell them to step up.

11            MR. DUBANEVICH:  Your Honor, if I may.  The Battery

12   Park City Authority, your Honor, is not a city entity.

13            THE COURT:  I know.  It's a state entity.

14            MR. DUBANEVICH:  We have over 300 injury cases.

15            THE COURT:  Who represents the Battery Park City

16   Authority?

17            MR. FLANNERY:  I do, your Honor.

18            THE COURT:  What's your name?

19            MR. FLANNERY:  John Flannery.

20            THE COURT:  How are you, Mr. Flannery?

21            MR. FLANNERY:  Okay.  How are you?

22            THE COURT:  Very pleased to meet you.

23            MR. FLANNERY:  Nice to meet you.

24            THE COURT:  Are you self-insured?

25            MR. FLANNERY:  Partially, yes.

76FVWORC                          Conference

1          THE COURT:  So who's in charge of appointing you to

2     the committee, authorizing you to join the committee?

3          MR. FLANNERY:  I would have to take it back to Battery

4     Park City Authority.

5          THE COURT:  Who's the general counsel?

6          MR. FLANNERY:  The head of litigation is Annette

7     Guarino.

8          THE COURT:  What's her name?

9          MR. FLANNERY:  Annette Guarino.

10          THE COURT:  If she doesn't want to be involved in

11     meetings, she'd better authorize you to join the meetings.

12          Okay.  I got three members for you, Mr. Tyrrell.

13     Battery Park, One Liberty Plaza, and Merrill Lynch.  Anybody

14     else want to join?  I think it's enough.  Do we have a tenant,

15     a large tenant, involved?  I guess Merrill's a tenant.

16          MS. COHEN:  That's correct.

17          THE COURT:  Okay.  Enough for today.  Anything else?

18     Those three people, please give your names to Mr. Hopkins.  And

19     I'll assume that you're going to become members of the

20     committee.  And Worby Groner and Cannata make sure your CDs are

21     out.

22          MR. CANNATA:  Thank you, your Honor.

23                         *    *    *

24

25